UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RONA HAWKES, | Case No.  C06-5505FDB |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| MICHAEL ASTRUE,<br>Commissioner of Social Security, | Noted for May 25, 2007 |
| Defendant. | |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been briefed by the parties.  The undersigned submits the following report, recommending that the Court remand the matter to the administration for further consideration.

**INTRODUCTION**

Plaintiff was 46 years old at the time of the hearing, has a high school diploma, some college credits, and training in medical billing (Tr. 29) Plaintiff had past relevant work as a claims clerk and customer service representative (Tr. 144-49). She last worked in September 2000 (Tr. 180).

Plaintiff protectively filed her application for Title XVI benefits on October 16, 2000, and a claim for Title II benefits on December 7, 2000 (Tr. 19, 123).  She alleged disability beginning September 26, 2000, due to bipolar disorder, insomnia, depression, hearing loss, memory and concentration problems,

high blood pressure, and back pain (Tr. 19). These applications were denied initially (Tr. 69-72) and on reconsideration (Tr. 76-78). An administrative law judge (ALJ) held a de novo hearing and issued an unfavorable decision on March 6, 2003 (Tr. 50-65). Plaintiff requested review, and the Appeals Council remanded for further proceedings (Tr. 66-68). A hearing was subsequently held on October 21, 2004, at which time an ALJ heard testimony from Plaintiff, who was represented by counsel, as well as vocational expert, Olof Elofson, Ph.D. (Tr. 933-971). On February 25, 2005, the ALJ issued an unfavorable decision finding Plaintiff retained the residual functional capacity (RFC) to perform work that existed in significant numbers in the national economy, and was not disabled within the meaning of the Social Security Act (Tr. 16-31). Plaintiff requested administrative review (Tr. 14-15), but the Appeals Council declined (Tr. 10-12), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 422.210.

Plaintiff brings the instant action pursuant to 205(g) of the Social Security Act to obtain judicial review of the final decision denying plaintiff's application for benefits. Specifically, plaintiff contends: (1) the ALJ failed to properly determine all of Plaintiff's severe impairments at step-two of the sequential evaluation of disability, (2) the ALJ failed to properly reject lay evidence; (3) the ALJ improperly rejected the opinions of the examining specialists, Dr. Brown, and medical expert Dr. Kooiker; (4) the ALJ improperly rejected the opinions of Nurse Curry; and (5) the ALJ improperly relied on the Vocational Expert's testimony. Defendant counter-argues that the ALJ applied the proper legal standards and that the ALJ's findings are properly supported by substantial evidence in the record.

## DISCUSSION

The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, this Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579

1  (9th Cir. 1984). Here, the ALJ failed to properly consider plaintiff's "severe" impairment(s).

2  *A.. The ALJ Erred At Step-Two*

3  Step-two of the administration's evaluation process requires the ALJ to determine whether an
4  impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996).  An impairment is "not
5  severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a),
6  416.921(a).  The  Social Security Regulations and Rulings, as well as case law applying them, discuss the
7  step two severity determination in terms of what is "not severe." According to the Commissioner's
8  regulations, "an impairment is not severe if it  does not significantly limit [the claimant's] physical ability to
9  do basic work  activities,"   20 C.F.R. §§ 404.1520(c),   404.1521(a)(1991).  Basic work activities are
10 "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting,
11 pushing, pulling, reaching,  carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-
12 28 ("SSR 85-28").  An impairment or combination of impairments can be found "not severe" only if the
13 evidence establishes a slight abnormality that  has "no more than a minimal effect on an individuals ability
14 to work." *See* SSR  85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(adopting SSR 85-28).

15 Here, the ALJ found Plaintiff suffered from four severe conditions, (1) depression, (2) personality
16 disorder with borderline traits, (3) obesity with mechanical back pain, and (4) bilateral chondromalacia of
17 the knees with a history of bilateral meniscus tears and arthroscopic surgery (Tr. 23).  Plaintiff argues the
18 ALJ erred when he did not find that her hand tremors and hearing loss were also severe conditions.

19 Ms. Hawkes' hearing loss was described by the audiologist as "moderate to moderately-severe" in
20 the right ear and "severe" in the left ear. (Tr. 759). The problem is due in part to scar tissue from three
21 prior surgeries, and is permanent, progressive and inoperable. (Tr. 883). She testified that she has problems
22 hearing human voices on the telephone, in rooms with background noise, and when the person is facing
23 away from her. (Tr. 938, 947, 964).

24 Ms. Hawkes' hand tremors were noticed by her therapist (Tr. 287), prescribing mental health nurse
25 (Tr. 840), and Dr. Lehmann (Tr. 865). Plaintiff testified that she has tremors everyday, and they cause her
26 to drop things (Tr. 949).  Plaintiff's daughter's lay witness statements corroborated her mother's
27 limitations and testimony related to the hand tremors.  See discussion below.

28

1   Clearly the hearing loss and the hand tremors are each more than a "slight abnormality" and will
2   have "more than a minimal effect" on any job that requires verbal communication or handling of tools,
3   goods and/or products.   Accordingly, the court finds the ALJ erred when he did not find either or both of
4   these conditions severe impairments.  This error, made at step-two of the five-step analysis to determine
5   disability, requires remand to the administration for further consideration of step-two and remaining issues.
6   Accordingly, the administration should reconsider the application in its entirety.

***B. The ALJ Erred When He Rejected Or Discredited The Lay Witness Statements***

8   The ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each
9   witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v.
10  Shalala, 12 F.3d  915, 919 (9th Cir. 1993).  Testimony from lay witnesses is of "particular value" when the
11  witness sees the claimant every day.  Smolen, 80 F.3d at 1289.

12  Ms. Hawkes' friend, Margaret Jones, completed a lay statement on an SSA form on January 18,
13  2001. (Tr. 194-198). She had observed severe bouts of depression, fits of anger and inability to keep
14  schedules. She does not always complete tasks, gets distracted and never finishes cleaning her house. (Tr.
15  194). She is unable to keep a routine, and has lost jobs due to attendance problems. (Tr. 195). During
16  times of depression she seldom bathes and does not do laundry. Her 11 year-old daughter cooks for
17  herself. (Tr. 196). She sleeps all day, and manages money poorly. (Tr. 197). She does not like to socialize.
18  (Tr. 198).

19  On March 11, 2002, Ms. Hawkes' 12-year-old daughter Cristina, completed a lay witness
20  questionnaire. (Tr. 213-222). She wrote that her mother hears things that are not there, and has problems
21  remembering things that happened and what day it is. (Tr. 213).  She is usually depressed and does not feel
22  like doing anything. She argues with family members everyday. (Tr. 214).  She doesn't clean up messes she
23  makes, and bathes infrequently after Cristina tells her she stinks and should take a shower. (Tr. 215). She
24  does not get dressed everyday and has problems bending over to put on her pants, shoes and socks. (Tr.
25  216). Cristina prepares the meals. (Tr. 217).  Her mother does not do activities with her, and does not
26  participate in planned activities outside the home. (Tr. 218).  She has no hobbies, and spends her time
27  sleeping and watching TV. (Tr. 219).

28  On November 16, 2002, Ms. Jones completed another lay statement. (Tr. 224-233).  She wrote

that her friend had withdrawn from the world and rarely leaves her home. She sleeps most of the time, panics easily and avoids groups of people. She forgets to take her medications and forgets appointments. (Tr. 224). Her mood is generally depressed or anxious, with lack of control. She argues with her daughter everyday. (Tr. 225). When she worked, she would become depressed for days and skip work. She has an extreme fear of anything new. She seldom showers or brushes her hair. (Tr. 226). She wears a night dress to the store or to drive her daughter to school. Ms. Jones wrote that Cristina does the cooking.  Ms. Hawkes occasionally washes the dishes, but does not complete the task. (Tr. 228).  Cristina is self-sufficient. (Tr. 229). She will drive Cristina to the grocery store and wait in the car while Cristina does the grocery shopping. She sleeps and watches TV all day. (Tr. 230).  On October 21, 2004, Cristina Hawkes prepared another written lay statement. (Tr. 308-312).  She was 15 years old at that time and was living with her mother. She got depressed and angry for no apparent reason and is "very, very forgetful and when she starts something she struggles to finish." She observed that her mother could stand to do the dishes for only about 20 minutes, then she would lay down complaining of sharp pain in her knees and back. (Tr. 308). She has seen her ankles swell, especially after a walk. When sitting she has to keep her back straight and moves often. If she walks too far, her back will hurt for a couple of days. Her hands shake uncontrollably and she drops things. (Tr. 309).  She spends a lot of time lying down on the couch with her feet up. Cristina does a lot of the housework, but her mother has gotten better about helping with it. Cristina calls her from school to wake her up if she has an appointment. Ms. Hawkes is shy and insecure in public and does not go out much. She does not take criticism well. (Tr. 310). Cristina has to repeat explanations because her mother complains that she cannot hear or understand them. She forgets appointments. She is slow and often fails to finish projects she starts. "She will either be too tired or just doesn't want to." (Tr. 311). With respect to depression and energy, she has a lot of ups and downs. She gets very depressed and sleeps at times, but then she will have a day where she seems all together. Her physical problems have gotten worse over time. She has problems with her knee, back, weight, breathing and blood pressure. (Tr. 312).

      Cristina lives with her mother and sees her everyday. (Tr. 213, 308). Margaret Jones is one of Ms. Hawkes' few friends, and sees her several times a week. (Tr. 194, 224).  The ALJ rejected the observations of Cristina and Ms. Jones because he found Ms. Hawkes not credible. (Tr. 27).  Defendant argues the lay

REPORT AND RECOMMENDATION
Page - 5

1  witness testimony is inconsistent with the medical records, however this argument is eroded by the court's
2  above finding that the ALJ erred when he failed to properly consider all of Plaintiff's severe limitations.
3  Each of these lay witnesses corroborate a greater level of impairment related to Plaintiff's hearing loss and
4  hand tremors than assigned by the ALJ. Accordingly, on remand the administration should reconsider the
5  lay witness evidence.

### C. The Medical Evidence Should Be Reconsidered

7  The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226,
8  1230 (9th Cir. 1987). She may not, however, substitute her own opinion for that of qualified medical
9  experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is
10 contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific
11 and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler,
12 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute
13 substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating
14 physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747,
15 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion
16 because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied
17 on laboratory test results, contrary reports from examining physicians and on testimony from the claimant
18 that conflicted with the treating physician's opinion.

19 Plaintiff persuasively argues the ALJ failed to properly consider the medical evidence provided by
20 Dr. Brown, Dr. Kooiker, and Nurse Curry. The Commissioner contends that the ALJ properly rejected the
21 report of Dr. Brown because it was based on Ms. Hawkes' self-report, which the ALJ found not credible.
22 A careful review of Dr. Brown's opinion does not support the ALJ's analysis. Dr. Brown's opinion was
23 not premised solely on self-report. Dr. Brown did a proper mental status evaluation, and psychological
24 testing. (Tr. 608-609). Moreover, there is no reason to presume, as the ALJ did in this case, that Dr.
25 Brown did not have access to the other medical records. In arguing the Plaintiff's depression was not as
26 severe as she was alleging, Defendant repeats the ALJ's observation that Ms. Hawkes was not depressed
27 three days prior to her meeting with Dr. Brown, who found her to be quite depressed. But a careful
28 review of the record reveals that this just demonstrates the rapid-cycling of Ms. Hawkes' bipolar disorder.

Review of the mental health evidence, demonstrates that Ms. Hawkes' mood swings are often extreme and rapid. For example, on October 17, 2000 she was depressed, on November 7, 2000 she was in good spirits, and on November 21, 2000, she was suicidal with a plan. (Tr. 245, 247 & 249). Another example: on January 4, 2001 she was depressed and had been sleeping for days, on January 11, 2001 she was manic and not sleeping at all, and on January 18, 2001 she was too tired to make it in to her counseling session. (Tr. 239-240). The fact that she suffers from a symptom of her impairment is not a valid reason for rejecting the opinion of an examining specialist regarding limitations caused by that impairment.

As a reviewing specialist, Dr. Kooiker had the benefit of reviewing all the mental health records in the file, including the conflicting evaluations by Dr. Brown and Dr. Chalstrom and the lengthy mental health treatment record from Nurse Curry. Dr. Kooiker was the expert selected by the Commissioner to render opinions based on the record as a whole. Dr. Kooiker testified that Ms. Hawkes' mental illnesses caused marked impairment in her ability to maintain concentration, persistence and pace. (Tr. 930). It does not appear the ALJ addressed this opinion in his decision.

Finally, the evidence from Deborah Curry, MS, RN is "other" medical evidence pursuant to 20 C.F.R. 913(e)(3) and Social Security Ruling 06-03p:

> … medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects Nurse Curry, a mental health nurse and therapist, met with Ms. Hawkes in approximately 65 therapy sessions between March 2000 and August 2004. (Tr. 223-307, 658-662, 766-810). The ALJ's failure to consider and evaluate her opinions about her patient's impairment severity and functional effects is legal error.

Nurse Curry's relevant opinions of limitation include:

> Her frequent clinical depressions make it very difficult to have the energy to consistently get to her employment. She has difficulty focusing and multitasking. She forgets short-term instructions. (Tr. 659).

> She was able to understand directions at work, but could not consistently perform them at the pace required. She becomes overwhelmed. (Tr. 661).

> Memory: fair to poor
> Social Interaction: poor
> Adaptation: fair to poor (Tr. 658).

> Difficulty with maintaining employment has been a significant issue throughout the last five years … [Rona] has experienced frequent bouts with depression. Ability to focus, retaining

REPORT AND RECOMMENDATION
Page - 7

information and leaving her home are very difficult at these times … she would requires an employment situation that allowed some flextime and an employer who had some understanding of mental illness and its ongoing challenges. (Tr. 279).

Here, the ALJ discredited Nurse Curry's opinion as it was not an acceptable medical source (Tr. 28). The ALJ did not make any other note of Nurse Curry's notes and opinion evidence. A review of the medical evidence should include a more specific reconsideration of Nurse Curry's long treatment notes and opinion.

*C. GIVEN THE ABOVE ERRORS, THE ALJ IMPROPERLY RELIED ON VOCATIONAL EXPERT TESTIMONY*

Plaintiff argues the ALJ erred when he relied on the Vocational Expert's testimony. Here the ALJ relied on the Vocational Expert's testimony to conclude Plaintiff retained the ability to performing work as a table worker (unskilled sedentary work).

At step-five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity. *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995). In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Defendant argues the ALJ properly relied on the Vocational Expert's testimony, but this is premised on the argument that the ALJ did not commit any error when he reviewed Plaintiff's severe impairment, lay witness evidence, and the medical evidence.  As explained above, the ALJ erred in his analysis of Plaintiff's severe impairments, the law witness evidence and medical evidence.  Accordingly, the ALJ improperly relied on the Vocational Expert's testimony.

## **CONCLUSION**

Based on the foregoing, the Court should REMAND the matter to the administration for further consideration and the matter should be assigned to different ALJ. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the

1  time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 25, 2007**,

2  as noted in the caption.

3       DATED this 2nd day of May, 2007.

5            */s/ J. Kelley Arnold*
          J. Kelley Arnold
6            United States Magistrate Judge